**CONTINENTAL CASUALTY CO., et al.**

v.

**HARTFORD ACCIDENT & INDEMNITY CO., et al.**

Civ. A. No. 92–5325.

United States District Court,
E.D. Pennsylvania.

Feb. 24, 1994.

Michelle T. Wirtner, Labrum and Doak, Elliott R. Feldman, Cozen & O'Connor, John F. Ledwith, Labrum and Doak, Philadelphia, PA, for Continental Cas. Co. and L. Robert Kimball & Associates.

Allan D. Windt, Bryn Mawr, PA, for Hartford Acc. and Indem. Co. and ITT Hartford Group, Inc.

## MEMORANDUM

LUDWIG, District Judge.

Defendant Hartford Accident and Indemnity Co. moves for reconsideration of the denial of summary judgment.[1]

This is an indemnity action arising from plaintiff Continental Casualty Co.'s settlement of a death benefits action and a personal injury action in state court for the total amount of $912,000. *Miller v. Grove Manufacturing, Inc.,* Nos. 3279 (February Term); 1564; 1565; and 1779 (April Term), C.P. Phila. (1987); and *Zelanko v. Grove Manu-*

---

1. On June 29, 1993 defendant Hartford's motion for summary judgment was denied by Judge Giles, who subsequently recused himself. 836 F.Supp. 246. Defendant Hartford's present motion also cites new grounds. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant has the burden of showing that there is no triable issue. The opposing party must point to specific, affirmative evidence in the record—and not simply rely on allegations or denials in the pleadings—in order to defeat a properly supported motion. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Borough of West Chester,* 891 F.2d 458, 464 (3d Cir.1989).

*facturing, Inc.,* Nos. 1528 (March Term); 1552; 1753; and 1754 (April Term); C.P. Phila. (1987). Jurisdiction is diversity. 28 U.S.C. § 1332.

On April 11, 1985 a crane operator's assistant, Bradley Miller, was electrocuted at a construction site on the Schuylkill Expressway. The crane operator, John Zelanko, was seriously injured. The accident took place when the crane came into proximity with an overhead high voltage wire.[2] Plaintiff L. Robert Kimball Associates was under contract with PennDoT to make certain inspections during the job. In the lawsuits that followed, both of Kimball's insurers, Continental Casualty and Hartford, joined in providing a defense, but Hartford refused to participate in the settlements. In the present action, Kimball also sues to recover its co-payment of $250,000.

Hartford's insurance policy contained an exclusion for claims based on the rendering of "professional services." Hartford policy, endorsement form L–3054–1. Hartford's position is that any fault on Kimball's part necessarily involved professional services— the utilization of expertise—and that Hartford is, therefore, entitled to summary judgment as a matter of law.

Judge Giles' opinion, focusing on Kimball's contractual duties, held that the type of safety inspections called for by the contract were not in the nature of professional services. Hartford contends that this decision stopped short of the dispositive issue: If Kimball's conduct was actionable, professional services had to have been involved. Or, more concretely, if Kimball's employees should have prevented the accident from happening, a level of expertise—and, in turn, professional services—must have been required, triggering the insurance policy exclusion.

■ At the summary judgment stage, it can not be said that any legal responsibility for the accident must have originated in a duty to provide "professional services." The maintenance of a safe workplace may not entail any expertise. Judge Giles Memorandum at 10. In the performance of a particular contract, both professional and non-professional services may be involved. A contract that contemplates non-professional services may, in some instances, necessitate expert knowledge in order to appreciate and avoid a latent or an esoteric danger. Merely because expertise may have been essential to the understanding of a given peril—here, the danger of the high voltage wire—does not by itself categorize Kimball's contractual services as professional.[3]

Moreover, the deposition of Kimball's general counsel does not demonstrate that underlying plaintiffs' claims were unequivocally related to "professional services." Hartford's motion for reconsideration at 10; Myers deposition at 51–67. On this subject, the deposition testimony is inconsistent and suggests that the claim could have been founded on Kimball's breach of a non-professional duty. *See* Myers deposition at 26–27, 96–98. Also, the affidavits dated December 8, 1993, submitted by Hartford on December 9, 1993, do not justify summary judgment. Instead, the triable issue remains whether the basis for the underlying settlement entailed professional or non-professional services.

Even if expertise were required to prove that the crane was operated dangerously close to the power line, it is unclear at this stage whether Kimball's allegedly negligent conduct constituted "professional services." *See Harad v. Aetna Cas. & Sur. Co.,* 839 F.2d 979, 984 (3d Cir.1988) ("professional services" defined as an act requiring mental or intellectual skill). The facts of the accident and the precise conduct attributed to Kimball can be ascertained by carefully drawn jury questions. For example, if the

2. It is unclear whether the crane made contact with the cable or an electrical arc occurred while the crane was approaching it.

3. There appears to be no authority on the subject whether the professional services exclusion pertains to the services to be rendered or to the rendering of services or both. Where the contract as a whole does not require the utilization of expertise, it would seem that isolated instances of the need for such knowledge or training should not, without more, place the services within the policy exclusion. Under generally accepted principals of insurance law, it would have to be shown that the expertise was material to the risk and consequent injury. *See* P.L.E. Insurance § 422 (once insured proves prima facie case of loss, burden shifts to defendant to prove an exclusion is applicable).

crane struck the cable, the serious danger involved may have been readily apparent to a layperson. Only within the context of a more complete record can such issues be properly resolved.

Hartford's summary judgment motion also contests the "reasonableness" of the settlements. It argues that Kimball should have expected to prevail on appeal even if it had lost at the trial level. Given the settlement recommendations of the trial judge and the obvious potential for liability, it can not be said that the prospects of an appeal should have excluded or even disfavored settlement as a "reasonable" litigation decision open to Kimball. Myers deposition at 26–27, 136–139; exhibit C of defendant Hartford's reply memorandum of April 19, 1993 (letter of counsel regarding settlement of underlying case). *See Trustees of Univ. of Pa. v. Lexington Ins. Co.,* 815 F.2d 890, 902–903 (3d Cir.1987).[4]

## ORDER

AND NOW, this 22 day of February, 1994, defendant Hartford Accident and Indemnity Company's motions for reconsideration and for summary judgment are denied.

---

4. The hearsay issue related to the trial judge's statements has not been raised. *See Trustees of Univ. of Pa.* at 904–907. However, there is enough in the record to deny Hartford's motion without considering the trial judge's comments for the truth of their content.